UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,)
        )
 PLAINTIFF,    )  CASE NO. 2:17-cr-144
        )
   vs.    )
        )
E. STANLEY HOFF,   )
        )
 DEFENDANT.    )
_____)

TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
BEFORE THE HONORABLE MICHAEL H. WATSON
TUESDAY, JANUARY 30, 2018; 2:00 P.M.
COLUMBUS, OHIO

FOR THE PLAINTIFF:
  Benjamin C. Glassman
  United States Attorney
  By: Kevin W. Kelley
  Assistant United States Attorney
  303 Marconi Boulevard, Suite 200
  Columbus, Ohio 43215

FOR THE DEFENDANT:
  Office of the Federal Public Defender
  By: Rasheeda Khan, Esq.
    Barshaunda Robinson, Esq.
  10 West Broad Street, Suite 1020
  Columbus, Ohio 43215

- - -

Proceedings recorded by mechanical stenography, transcript
produced by computer.

LAHANA DUFOUR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER
85 MARCONI BOULEVARD, ROOM 121
COLUMBUS, OHIO 43215
614-719-3286

2

```
 1                            Tuesday Afternoon Session

 2                              January 30, 2018

 3                                  -  -  -

 4           THE COURTROOM DEPUTY:  This is case number

 5   2:17-cr-144, United States of America versus E. Stanley Hoff.

 6   Counsel, please enter your appearances.

 7           MR. KELLEY:  Assistant United States Attorney Kevin

 8   Kelley.  Good afternoon, Your Honor.

 9           THE COURT:  Good afternoon.

10           MS. KHAN:  Rasheeda Khan and Barshaunda Robinson on

11   behalf of Mr. Hoff.

12           THE COURT:  Good afternoon.

13        Mr. Hoff, good afternoon to you.

14           THE DEFENDANT:  Thank you.

15           THE COURT:  Ms. Khan, Ms. Robinson, we have your

16   motion to withdraw as counsel.  What's going on?

17           MS. KHAN:  Your Honor, the situation is this.

18   Mr. Hoff has indicated that he is resolute in his decision to

19   move to withdraw his plea.

20           THE COURT:  I'm resolute in my decision to deny that.

21   So unless there is something that I'm missing, we've got a

22   pretty firm record here where he clearly understood what he was

23   doing previously.  Other than that, I'm willing to hear what

24   you have to say.

25           MS. KHAN:  Thank you, Your Honor.
```

3

1    Our concern, which manifested itself by way of this

2    motion to withdraw, came from not only our discussions with

3    Mr. Hoff indicating his interest in withdrawing the plea, but

4    that the research and Rule 11 indicates that if a defendant is

5    moving to withdraw his plea that the Court would be required to

6    go through an inquiry as to the basis, and there's factors to

7    go through.

8              THE COURT:  Right.

9              MS. KHAN:  And so under that analysis, that puts us in

10   a position of on the one hand having to defend our belief at

11   the time that we felt that -- let me put it this way.  If we

12   had had concerns about Mr. Hoff's mental health at the time or

13   that there were significant reservations then we would have had

14   an obligation to speak up at that time and not allow him to

15   move forward with entering his guilty plea.  And so now if the

16   Court were to go through an analysis of deciding whether or not

17   withdrawing the plea is appropriate then if we were asked to

18   opine on what was going on, what our observations were with

19   Mr. Hoff, I believe that that puts us in a conflict.  That's my

20   primary concern with allowing us to move forward in the event

21   that the Court wishes to entertain the defendant's desire to

22   withdraw his plea.

23             At this point, Your Honor, if the Court is unwilling to

24   allow us to withdraw then I think that we'd like to take a

25   break and see, sort of reassess what's the best way to move

4

1   forward in putting before this Court or making a record

2   regarding Mr. Hoff's interest in withdrawing the plea.

3         THE COURT: Mr. Hoff, what is your reason for wanting

4   to withdraw your plea?

5         THE DEFENDANT: Your Honor, my basic reason is mental

6   health by reason of situational depression. It is my

7   understanding from mental health officials that depression is

8   when the serotonin and dopamine levels in the brain bottom out

9   and at that point in time a person cannot make rational

10   decisions. Cognitive skills are somewhat scattered. And at

11   that particular time in October, I was extremely suicidal. I

12   believe I stated so that day or in some manner indicated that I

13   was going to go back to my cell and if not end my life

14   immediately, take myself off my medications and let nature take

15   its course via way of heart attack or stroke. And I was under

16   that duress or depression until approximately December 5th

17   through the 10th, sometime when things started improving as far

18   as my mental condition.

19         THE COURT: And to what do we attribute the

20   improvement?

21         THE DEFENDANT: The improvement is being able to

22   attend, on almost a daily basis, religious services,

23   participating in other courses to try to better myself,

24   becoming active, taking counseling and some recovery services

25   programs. I am now getting ready to enter into a program

5

1    called MIT, which is Men in Trauma, which deals with depression

2    and trauma of being imprisoned.  Basically, by the grace of

3    God, I realized that I need to stand up and go forward.

4         THE COURT:  Far be it from me to question the grace of

5    God.  And I don't mean that in a trite way.

6         I'm going to read to you from the report that was done

7    by Daniel Davis, Ph.D. that was requested by your counsel, I

8    believe, prior to our proceeding with this case.  Specifically

9    as to mental health history.

10        On page 6 of 20 -- please be seated.

11        Mr. Hoff said that he went into family counseling while

12   raising his daughters and has never been in individual

13   psychotherapy.  He told me that he worked for a while as a paid

14   research subject for the OSU Department of Psychology but he

15   has never been psychiatrically hospitalized.  He denied any

16   history of suicidal or self-injurious behaviors.  He does not

17   think that there is a family history of mental illness.

18        He told me that he has never been prescribed any mental

19   health medications.  He denied any history of head trauma,

20   concussion, loss of consciousness or any other neurological

21   involvement.

22        Do we need to have you evaluated again, sir?

23        THE DEFENDANT:  Well, I don't know.  I think

24   Mr. Davis' examination is pretty thorough.

25        THE COURT:  He does say that there's an unspecified

6

1  depressive disorder.

2       THE DEFENDANT:  Yes.  And that was the conclusion.

3       THE COURT:  Nonetheless, he finds that you are

4  competent to proceed and assist in your own defense, and that's

5  why we proceeded with the plea.

6       Appreciation of the possible penalties.  I'm reading

7  from page 18 of 20.  This defendant was able to tell me what he

8  might enter as a plea and explain the basis for that plea,

9  including discussing what would be required for a conviction.

10  He knew that he could be sent to prison for up to 120 months.

11       His appraisal of available legal defenses:  Mr. Hoff

12  told me what he believed to be a plausible defense and what he

13  thought his attorneys should primarily focus upon.  He noted

14  that the prosecution would have to prove my guilt, explain my

15  way into it.

16       Appraisal of the likely outcome:  Mr. Hoff had a

17  realistic view of his legal peril.  Mr. Hoff knew that he could

18  face incarceration.  While he was firm as to his belief

19  concerning his personal culpability, he also recognized that

20  there was another side and that there were aspects of the case

21  against him that could result in a finding of guilt.  He also

22  recognized that the Court had authority over him and that he

23  would have to abide by the decisions of the Court.

24       Then on the issue of your ability to assist counsel:

25  You were administered a test called FIT-R.  He was able to tell

1  me in considerable detail the circumstances of the events, able

2  to tell me a version of the offense that was understandable and

3  internally consistent.

4       Capacity to relate to a lawyer:  Mr. Hoff could tell me

5  the name of his attorney.  He described her in very positive

6  terms and said that he has confidence in her; stated that, so

7  far, he agrees with how she has handled his case.  He discussed

8  how he would approach any potential disagreements.  Potential

9  issues in his ability to relate to counsel could be his

10  tendency to be fairly unyielding in his thinking.

11       Capacity to plan legal strategy:  Mr. Hoff was able to

12  correctly define the concept of a plea bargain.  Also

13  demonstrate appropriate self-serving, in the legal sense,

14  behavior and he said that he would take her advice as to

15  matters of testimony and discussions before entering a plea.

16  He was able to discuss with me the reasons that he might refuse

17  a plea agreement and the potential legal peril to him if he

18  chose to take his case to court.

19       Capacity to engage in defense, capacity to challenge

20  witnesses, capacity to testify relevantly, to manage courtroom

21  behavior.  His forensic opinions followed.

22       Mr. Hoff's not seriously mentally ill but is diagnosed

23  with unspecified depressive disorder as well as unspecified

24  personality disorder.  Although my psychological testing

25  yielded indeterminate results due to defensiveness, I observed

8

1  in my interview no compelling evidence of a mental illness of

2  such severity that would compromise his ability to rationally

3  understand the nature and objectives or assist in his defense.

4  Mr. Hoff does not have a developmental disability.  He is not

5  intellectually disabled.  Mr. Hoff is presently able to

6  understand the nature and objectives against him.  Mr. Hoff is

7  presently able to assist his attorney in his defense.

8          Then I have a full transcript.  Have you read this, the

9  14-page transcript of the plea hearing?

10              THE DEFENDANT:  I don't believe I have that with me.

11              THE COURT:  Would you like an opportunity to read it?

12              THE DEFENDANT:  Yes, I have received a copy of it.  I

13  don't have it with me today.

14              THE COURT:  Here.

15              THE DEFENDANT:  I have read it, sir.

16              THE COURT:  So what about the answers that you gave on

17  that day is different today?

18              THE DEFENDANT:  Well, if we look at the dates of the

19  evaluation, the onset of the depression did not come about

20  until seven to ten days after that.  And as I explained further

21  in my itinerary of what caused this depression, at the Franklin

22  County correction services center I was moved from one cell to

23  another where -- and I believe that was toward the middle of

24  November that move was made.  No, it was toward -- the actual

25  date I don't recall but it was toward the middle of October

1    that I was moved to a cell on the eighth floor north right and

2    in that situation I experienced three people who were racists

3    and they continually would threaten people for their food trays

4    and their commissary.  And the threats were enforced by

5    throwing feces and urine at us.  In fact, for four days I had

6    to live with my equipment and supplies boxed up under my bunk

7    while I sat in the corner of the bunk almost constantly daily

8    with my mat over me to avoid being bombarded with feces and

9    urine.

10           This went on, like I say, for four days, until we

11   finally had to take the matter into our own hands and actually

12   put our lives on the line and take this to actually a member of

13   Tom Tyack's team who then called Sergeant Ford at the Franklin

14   County correction services and asked her to get the situation

15   cleared up and under control immediately.

16           THE COURT:  You understand that that same call to the

17   Court would have affected the same result?

18           THE DEFENDANT:  Sir, I have no idea how to get ahold

19   of the Court.

20           THE COURT:  Well, you did have -- you have two lawyers

21   that know how.

22           THE DEFENDANT:  Okay.  Let me go into that.  I did

23   call both lawyers several times.  I left rather lengthy and

24   detailed messages, probably not using some of the most elegant

25   of descriptive words of what was going on and had been getting

10

1    no response.  That's why we turned to an inmate in the same

2    situation with us who had a sister that was working for Tom

3    Tyack.  We were desperate at that time and under --

4           THE COURT:  I have no problem with you going to

5    Mr. Tyack.  I'm just saying I would have done the same thing.

6           THE DEFENDANT:  Under much duress.  Yes.  And this is

7    what caused -- I think this is what caused the depression to

8    head for the bottom as it did.

9           THE COURT:  All right.  Let's do this then.  Let's

10   re-refer you to Dr. Davis for an updated evaluation to

11   determine whether or not the situation has changed with your

12   mental health post-plea so that we can either grant your motion

13   or deny the motion with the most up-to-date information that we

14   have.

15         MR. KELLEY:  Your Honor, if I may.  My only concern is

16   that I think defense counsel has raised a good point that

17   ultimately -- I agree with the Court, bottom line, and probably

18   defense counsel agrees with the bottom line.  That's one reason

19   they don't feel comfortable in the position that we're putting

20   them in.  As much as I hate to prolong things, I really think

21   if Mr. Hoff wants to explore this, he probably needs the

22   benefit of counsel that was not part of the plea process so

23   that he can explore whatever claims he might have as to how he

24   wasn't counseled for the plea process.  Obviously these

25   esteemed counsel can't play both those roles.

1    And so as much as I know the Court is reluctant, given

2 the record that we have, which you examined thoroughly, bottom

3 line I think, yes, that's where we end up.  But I kind of think

4 to clean our record -- to make the record the most clean

5 possible, if we gave Mr. Hoff counsel so that he could at least

6 tell them what he wants and why and that counsel can explore

7 with him the *Bashara* factors and why a withdrawal of guilty

8 plea would be likely unsuccessful but he can have that

9 discussion.  I kind of think we might end up at a better place

10 ultimately.

11    MS. KHAN:  That's precisely our position, Your Honor,

12 which is why the motion is a motion to withdraw as counsel on

13 the basis being that he intends to move forward with this

14 motion to withdraw the plea.  We have not made that motion

15 because we didn't feel that we could given the conflicts that

16 Mr. Kelley has already explained.

17    MR. KELLEY:  But meanwhile, an updated evaluation,

18 Your Honor, would give new counsel maybe a little thing to work

19 off of as well and all of us the benefit of maybe where

20 Mr. Hoff is currently.

21    THE COURT:  The Court will grant the government or the

22 defense's motion to withdraw as counsel and appoint either Tom

23 or Jonathan Tyack to represent you.  I intend to proceed with a

24 referral either to Kristen Haskins or Dan Davis in the near

25 future.  I need to be in contact with one or both of them to

12

1    see whether they're willing to accept the appointment.

2          You have orally indicated that you wish to withdraw your

3    plea.  You may want to discuss that with new counsel before you

4    file a formal motion, but I've heard what you've said today.

5    As I said, my intention is to get an updated psychological

6    evaluation and get you with new counsel.  All right.

7              THE DEFENDANT:  Okay.

8              THE COURT:  Thank you.  That will be all for today.

9         (The proceedings were adjourned at 2:20 p.m.)

10                          - - -

13

1                    C E R T I F I C A T E

2

3          I, Lahana DuFour, do hereby certify that the foregoing

4   is a true and correct transcript of the proceedings before the

5   Honorable Michael H. Watson, Judge, in the United States

6   District Court, Southern District of Ohio, Eastern Division, on

7   the date indicated, reported by me in shorthand and transcribed

8   by me or under my supervision.

9

10

11                         s/Lahana DuFour
                           Lahana DuFour, RMR, CRR
12                         Official Federal Court Reporter
                           July 11, 2018
13

14

15

16

17

18

19

20

21

22

23

24

25